**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| RAYBORN J. DURAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv86 |
| | ) | |
| ANTHONY G. CHARLES, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion to Dismiss" (Docket Entry 12) (the "Motion to Dismiss"), as well as for an order on "Defendant's Motion to Strike" (Docket Entry 18) (the "Motion to Strike"). For the reasons that follow, the Court will deny the Motion to Strike and should deny the Motion to Dismiss.

### BACKGROUND

Pursuant to 42 U.S.C. § 1983, Rayborn J. Durand ("Plaintiff") commenced this action against Anthony G. Charles, MD ("Defendant") for acts and/or omissions amounting to deliberate indifference to Plaintiff's serious medical needs during Plaintiff's pretrial detention by the North Carolina Department of Public Safety (the "DPS"). (Docket Entry 2 (the "Complaint") at 4-7.) According to the Complaint:

Plaintiff "was diagnosed with a right inguinal hernia" during his pretrial detention at the DPS's Craven Correctional Institution (the "Craven C.I."). (Id. at 5.)[1] Defendant performed "a right inguinal hernia repair with mesh" on Plaintiff "at the U.N.C. Medical Center at Chapel Hill" (the "U.N.C.M.C.") on February 1, 2013. (Id.) "In the next days[, Plaintiff's] right scrotum became swollen and painful," causing his return to the U.N.C.M.C. on February 7, 2013, at which point Defendant "excised a retained distal sac sized 6.8 cm x 3.7 x 2.5 cm." (Id.) Following this surgery, Plaintiff "was taken to Central Prison" (the "C.P.") and "admitted to the C.P. Hospital acute care ward." (Id.) Plaintiff "developed a painful swollen hardened mass surrounding his right testicle" and, at an appointment at U.N.C.M.C. on February 19, 2013, Defendant "instructed [Plaintiff] to take ibuprofen for pain and to elevate and ice his scrotum for swelling" and discharged Plaintiff from Defendant's care. (Id.)

On February 21, 2013, an ultrasound technician conducted an ultrasound of Plaintiff's scrotum at the C.P. Hospital. (Id.) The

---

[1] The term "inguinal hernia" denotes "a hernia in which part of the intestine protrudes into the inguinal canal." Inguinal Hernia, Merriam-Webster Unabridged Dictionary, http://unabridged.merriam-webster.com/unabridged/inguinal%20hernia (last visited Dec. 30, 2016). As relevant to this action, the inguinal canal constitutes "a passage in the male through which the testis descends into the scrotum and in which lies the spermatic cord." Inguinal Canal, Merriam-Webster Unabridged Dictionary, http://unabridged.merriam-webster.com/unabridged/id%3Ainguinal%20 canal (last visited Dec. 30, 2016).

ultrasound technician informed Physician Assistant Kurian ("P.A. Kurian"), Plaintiff's C.P. Hospital "care provider," that the ultrasound "revealed decreased to no blood flow to [Plaintiff's] right testicle." (Id.) "P.A. Kurian emergently contacted [Defendant] who when told of the [ultrasound] finding stated that he was already aware that the blood supply to [Plaintiff's] testicle was diminished and there was a good chance [Plaintiff] would lose his testicle. [Defendant] counseled P.A. Kurian against tak[i]ng any further action." (Id. at 6.) Following his discussion with Defendant, P.A. Kurian informed Plaintiff "of the [ultrasound] result and of the impending possible loss of his testicle," and "told [him] that no further action would be taken at [Defendant's] recommendation." (Id.)

"That evening," "Dr. Tharrington, a radiologist who had just read [Plaintiff's ultrasound] results," called "Dr. Bowen of the C.P. Hospital emergency dep[artment]." (Id.) Dr. Tharrington told Dr. Bowen "that immediate emergency surgical consultation and followup was urged concerning the lack of testicular blood flow." (Id.) On the morning of February 22, 2013, Plaintiff underwent exploratory surgery by Dr. Gorden Fifer at the U.N.C.M.C., which "revealed a necrotic right testicle which was removed." (Id.)[2] On

---

2   "Necrotic" serves as an adjective of "necrosis," see Necrotic, Oxford Dictionaries, https://en.oxforddictionaries.com/definition/necrotic (last visited Dec. 30, 2016), which, in turn, means "[t]he death of most or all of the cells in an organ or tissue due to disease, injury, or failure of the blood supply,"

March 25, 2013, Plaintiff "was released from Dr. Fifer's care and was also released from the C.P. Hospital and returned to Craven C.I." (<u>Id.</u>)

"[T]he lack of or decreased blood flow to [Plaintiff's] testicle, which was foreknown by [Defendant] before the [ultrasound,] was a serious medical need requir[i]ng treatment." (<u>Id.</u> at 7.) Defendant "was deliberately indifferent to this serious medical need by failing to initiate action when he first knew of the lack of or decreased blood flow and possible impending loss of [Plaintiff's] testicle and by counseling against tak[i]ng any preventative action to prevent its loss." (<u>Id.</u>) "This deliberate indifference resulted in a significant injury to [Plaintiff], the loss of his testicle, the importance of which is compounded by the fact that [Plaintiff] is incarcerated." (<u>Id.</u>) This conduct violated Plaintiff's "right to due process as . . . a pretrial detainee," for which violation, Plaintiff "seek[s] compensatory and punitive damages, costs of this action[,] and any other relief the [C]ourt deems just and proper." (<u>Id.</u>)

## DISCUSSION

### I.  Motion to Strike

As an initial matter, Defendant moves to strike as untimely Plaintiff's response to the Motion to Dismiss (Docket Entry 16 (the

---

<u>Necrosis</u>, Oxford Dictionaries, https://en.oxforddictionaries.com/definition/necrosis (last visited Dec. 30, 2016).

"Response")).  (Docket Entry 18 at 1.)  Specifically, Defendant argues that striking Plaintiff's Response as untimely constitutes "an appropriate sanction" for Plaintiff's conduct in filing his Response on Monday, August 8, 2016 (see Docket Entry 16 at 17), rather than by his deadline of Friday, August 5, 2016 (see Text Order dated July 12, 2016).  (Docket Entry 19 at 3.)  Defendant articulates no prejudice from this one-business-day delay.  (See generally Docket Entry 19.)  Rather, Defendant seeks to strike the Response in the hope that the Court will "grant Defendant's Motion to Dismiss as an uncontested motion pursuant to Local Rule 7.3(k)." (Id. at 4.)

By Local Rule, the Court may treat any motion lacking a timely response as an uncontested motion, which the Court may grant without further notice.  M.D.N.C. LR 7.3(k).[3]  Pursuant to the precedent of the United States Court of Appeals for the Fourth Circuit, however, the Court must evaluate the propriety of granting the Motion to Dismiss regardless of whether Plaintiff opposed such dismissal.  See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) (explaining that, "[e]ven though [the plaintiffs] did not challenge the motions to dismiss, . . . the district court nevertheless has an obligation to review the motions

_____

3  More specifically, Local Rule 7.3(k) provides that, "[i]f a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  Id.

5

to ensure that dismissal is proper"); accord Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 449 (M.D.N.C. 2005) ("As with summary judgment motions, a court does not grant a motion for dismissal merely because it is uncontested. Rather, a district court should review a motion to dismiss on its merits to determine whether the pleadings are sufficient.").

Under these circumstances, the Court denies the Motion to Strike.

## II.  Motion to Dismiss

### A.  Federal Rule of Civil Procedure 12(b)(6) Challenge

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of Appeals of Md., __ U.S. __, 132 S. Ct. 1327 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se

complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

To survive a Rule 12(b)(6) motion, a complaint must contain enough factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (ellipsis in original; internal quotation marks omitted).

### i. Deliberate Indifference Standards

Courts evaluate pretrial detainees' conditions of confinement in state custody under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted

prisoner." <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988).
In that regard, "when the State by the affirmative exercise of its
power so restrains an individual's liberty that it renders him
unable to care for himself, and at the same time fails to provide
for his <u>basic human needs</u> — *e.g.*, food, clothing, shelter, <u>medical
care</u>, and reasonable safety — it transgresses the substantive
limits on state action set by the Eighth Amendment <u>and</u> the Due
Process Clause. <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>,
489 U.S. 189, 200 (1989) (emphasis added).

"Thus, deliberate indifference to the serious medical needs of
a pretrial detainee violates the [D]ue [P]rocess [C]lause." <u>Young
v. City of Mount Ranier</u>, 238 F.3d 567, 575 (4th Cir. 2001).
Moreover, it appears that the same analysis applies to Section 1983
deliberate indifference claims under the Fourteenth Amendment as
under the Eighth Amendment. <u>See</u> <u>Duff v. Potter</u>, No. 1:15-cv-26,
2016 WL 1615684, at *5 & n.4 (W.D.N.C. Apr. 22, 2016) (noting that
"[t]he Supreme Court in <u>Kingsley[ v. Hendrickson</u>, __ U.S. __, 135
S. Ct. 2466 (2015),] did not explicitly extend the objective
reasonableness standard for excessive force claims to other claims
brought by pretrial detainees, including deliberate indifference
claims"), <u>aff'd in part, vacated in part, remanded</u>, No. 16-6783,
2016 WL 6518876 (4th Cir. Nov. 3, 2016); <u>but see</u> <u>Kinder v. Merced
Cty.</u>, No. 1:16-cv-1311, 2016 WL 5341254, at *3-4 (E.D. Cal. Sept.

22, 2016) (applying <u>Kingsley</u> objective reasonableness standard to pretrial detainee's deliberate indifference claim).

Under that standard, Plaintiff must show that Defendant "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). A medical need qualifies as serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (internal quotation marks omitted). A defendant displays deliberate indifference where he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." <u>Id.</u> (emphasis and internal quotation marks omitted); <u>see also</u> <u>Scinto v. Stansberry</u>, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994))).

"[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer</u>, 511 U.S. at 835. "It requires that a [defendant] actually know of and disregard an objectively

serious condition, medical need, or risk of harm." <u>De'lonta v.</u> <u>Johnson</u>, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). A plaintiff can satisfy this standard by showing "'that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.'" <u>Scinto</u>, 841 F.3d at 226 (quoting <u>Makdessi v. Fields</u>, 789 F.3d 126, 133 (4th Cir. 2015)).

A plaintiff can also establish "a prima face case of deliberate indifference" where "'a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it.'" <u>Id.</u> (brackets and ellipsis in original) (quoting <u>Parrish ex</u> <u>rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004)). In addition, "'[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs.'" <u>Id.</u> (brackets in original) (quoting <u>Miltier v. Beorn</u>, 896 F.2d 848, 853 (4th Cir. 1990), <u>overruled in part on other grounds by</u> <u>Farmer</u>, 511 U.S. at 837).

### ii. Defendant's Contentions

Defendant argues that "[P]laintiff has failed to allege any conduct that would rise to the level of a Fourteenth Amendment violation for deliberate indifference to a serious medical need."

(Docket Entry 13 at 9.)[4]  In particular, Defendant emphasizes "the extensive medical care that was provided to [Plaintiff] by the Defendant and several other health care professionals." (Id.; see also id. at 9-11 (detailing medical treatment).)  In Defendant's view,

> Plaintiff's allegations do not involve conduct that is "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier[,] 896 F.2d at 851.  Rather, the facts alleged in the Plaintiff's Complaint evidence a herculean effort to address Plaintiff's condition.  At best, Plaintiff's claims give rise to nothing more than a mere disagreement about his treatment.  Indeed, the plaintiff's cause of action, at its core, is one for negligence.

(Docket Entry 13 at 11.)  Defendant's arguments lack merit.

To begin with, "'[a] total deprivation of care is not a necessary condition for finding a constitutional violation: Grossly incompetent or inadequate care can [also] constitute deliberate indifference.'" De'lonta, 708 F.3d at 526 (second set of brackets in original) (quoting Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010)).  Moreover, "just because" Defendant and other medical personnel "provided [Plaintiff] with some treatment" does not mean that they "necessarily provided h[im] with constitutionally adequate treatment." Id. (emphasis in original) (rejecting contention that, by alleging that the defendants

_____

4    Defendant does not dispute that Plaintiff's medical situation qualifies as a "serious medical need." (See generally Docket Entry 13.)

"actively participated in providing treatment directed to" the plaintiff's medical issue, the plaintiff "necessarily failed to state a plausible claim that [the defendants] were deliberately indifferent to th[e medical] risk" (internal quotation marks omitted)). Instead — regardless of the treatment provided — the determinative question remains whether Plaintiff's allegations regarding Defendant plausibly support an inference that Defendant acted with deliberate indifference towards Plaintiff's serious medical needs. See, e.g., Goodman v. Johnson, 524 F. App'x 887, 888-90 (4th Cir. 2013) (reversing dismissal of claims against three doctors who "each . . . refused to adequately address [the plaintiff's] complaints that his eyeglasses cause him headaches," but affirming dismissal of claims against other defendants where the "complaint failed to allege facts from which one might infer that [any of those defendants] improperly interfered with [the plaintiff's] receipt of contact lenses or was aware that [his] doctors were not providing him with adequate treatment").

On that front, Defendant contends that Plaintiff's allegations amount to "a mere disagreement about his treatment" that cannot support a Section 1983 claim. (Docket Entry 13 at 7-9, 11-12.)[5]

_____

5  Medical negligence cannot support a Section 1983 claim because,

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." . . . In order

The Fourth Circuit has made it clear that "mere disagreements between an inmate and a physician over the inmate's proper medical care are not actionable [under Section 1983] absent exceptional circumstances." Scinto, 841 F.3d at 225 (brackets and internal quotation marks omitted). However, the Fourth Circuit also has stated that, "although . . . a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." De'lonta, 708 F.3d at 526 (footnote omitted).[6]

Consistent with the foregoing statement from De'lonta, the Fourth Circuit recently reversed the dismissal of a deliberate indifference claim where the plaintiff "alleged that his doctors acknowledged some symptoms but ignored most, disregarded abnormal test results, and failed to treat any of his symptoms effectively," observing that these "facts . . ., if true, would establish that his doctors actually knew of and disregarded an objectively serious

_____

    to state a cognizable claim, a prisoner must allege acts
    or omissions sufficiently harmful to evidence deliberate
    indifference to serious medical needs.  It is only such
    indifference that can offend "evolving standards of
    decency" in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-06.

    6 "[I]n this context[,] the 'essential test is one of medical
necessity and not simply that which may be considered desirable.'"
Id. at 526 n.4 (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th
Cir. 1977)).

condition, medical need, or risk of harm." <u>Jehovah v. Clarke</u>, 798 F.3d 169, 181-82 (4th Cir. 2015) (brackets and internal quotation marks omitted)), <u>cert. denied</u>, __ U.S. __, 136 S. Ct. 1829 (2016). Similarly, a neighboring district court has observed that, "'[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" <u>Newbrough v. Piedmont Reg'l Jail Auth.</u>, 822 F. Supp. 2d 558, 579-80 (E.D. Va. 2011) (quoting <u>Mandel v. Doe</u>, 888 F.2d 783, 789 (11th Cir. 1989)); <u>see also</u> <u>Estelle</u>, 429 U.S. at 104 n.10 (citing as example of deliberate indifference "<u>Williams v. Vincent</u>, 508 F.2d 541 ([2d Cir.] 1974) (doctor's choosing the 'easier and less efficacious treatment' of throwing away the prisoner's ear and stitching the stump may be attributable to 'deliberate indifference . . . rather than an exercise of professional judgment')" (ellipsis in original)).

Here, Plaintiff alleges that:

In the days after Defendant performed "right inguinal hernia repair" surgery on him, Plaintiff's "right scrotum became swollen and painful." (Docket Entry 2 at 5.) Defendant then conducted another surgery on Plaintiff, during which he removed "a retained distal sac." (<u>Id.</u>) Following this surgery, Plaintiff "developed a painful swollen hardened mass surrounding his right testicle." (<u>Id.</u>) At a subsequent evaluation, Defendant "instructed

14

[Plaintiff] to take ibuprofen for pain and to elevate and ice his scrotum for swelling" and discharged Plaintiff. (Id.)

An ultrasound conducted two days later "revealed decreased to no blood flow to [Plaintiff's] right testicle" (id.), prompting prison medical personnel to "emergently contact[ Defendant]" (id. at 6). In response to this urgent communication, Defendant "stated that he was already aware that the blood supply to [Plaintiff's] testicle was diminished and there was a good chance [Plaintiff] would lose his testicle," and advised prison medical personnel not to take further action. (Id.) Prison medical personnel followed Defendant's advice, informing Plaintiff "that no further action would be taken at [Defendant's] recommendation." (Id.) That evening, other medical personnel intervened, securing an "immediate emergency surgical consultation and followup . . . concerning the lack of testicular blood flow." (Id.) That surgery "revealed a necrotic right testicle which was removed." (Id.)

These allegations establish a claim for deliberate indifference sufficient to withstand Rule 12(b)(6) dismissal. As an initial matter, given his alleged "aware[ness] that the blood supply to [Plaintiff's] testicle was diminished and there was a good chance [Plaintiff] would lose his testicle" (id.), Defendant's actions in discharging Plaintiff with instructions to ice and elevate his scrotum arguably represent the type of cursory treatment that "may amount to deliberate indifference," Newbrough,

822 F. Supp. 2d at 580 (internal quotation marks omitted).  In any event, Defendant's refusal to provide medical care to Plaintiff when informed of the ultrasound results, coupled with his "counsel[ to] P.A. Kurian against tak[i]ng any further action" to rectify the decreased testicular bloodflow (Docket Entry 2 at 6), plausibly supports an inference of deliberate indifference because such allegations, if true, would establish that Defendant "ignored most [of Plaintiff's symptoms], disregarded abnormal test results, and failed to treat any of [Plaintiff's] symptoms effectively," Jehovah, 798 F.3d at 181; see also Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (explaining that "[c]ontinued complaints by [the inmate], or the manifest symptoms described by [a doctor], would have put defendants on notice that additional care was required," and citing with approval "Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985) (upholding denial of judgment n.o.v. where 'it could be found that [the] defendants ignored a clear warning that the medical treatment they provided for [the] plaintiff, a pretrial detainee[,] was inadequate, allowing him to deteriorate beyond recovery')," and "Duncan v. Duckworth, 644 F.2d 653, 654 (7[th] Cir. 1981) ('While the initial failure to properly diagnose [the] plaintiff prisoner's injury may be attributable to no more than an error in judgment, . . . the failure to promptly schedule surgery, once the need for it was recognized, and in the face of [his] repeated complaints of severe pain, . . . gives rise to at

least an inference of deliberate indifference')" (ellipses in original; brackets omitted)).

In sum, construed in the light most favorable to Plaintiff and taking all reasonable inferences in his favor, the Complaint alleges that Defendant knowingly failed to treat his obvious, serious medical need, which required prompt surgical intervention.[7] In other words, Plaintiff "has pled facts that, if true, would establish that [Defendant,] his doctor[,] actually kn[e]w of and disregard[ed] an objectively serious condition, medical need, or risk of harm." Jehovah, 798 F.3d at 182 (final two sets of brackets in original; internal quotation marks omitted). The Complaint therefore sufficiently alleges a Section 1983 claim for Defendant's deliberate indifference to Plaintiff's serious medical needs, defeating Defendant's 12(b)(6) contentions.

## B. North Carolina Rule of Civil Procedure 9(j) Challenge

As a final matter, based on Plaintiff's failure to comply with North Carolina Rule of Civil Procedure 9(j) ("Rule 9(j)"), Defendant seeks dismissal of any medical malpractice claim that "Plaintiff has attempted to state." (Docket Entry 12 at 1.)[8]

---

7    This conclusion affords Plaintiff the benefit of the inference — based on the apparent consensus between Dr. Tharrington, Dr. Bowen, and Dr. Fifer — that surgical intervention could remedy the decreased testicular bloodflow.

8    Pursuant to Rule 9(j), any complaint alleging a medical malpractice claim must either (i) contain a certification that a person who qualifies as an expert witness under North Carolina Rule of Evidence 702 has reviewed all reasonably available "medical

Plaintiff's Complaint states only a Section 1983 claim for deliberate indifference to Plaintiff's serious medical needs. (See Docket Entry 2 at 7 (contending that Defendant "was deliberately indifferent to [Plaintiff's] serious medical need," thereby violating Plaintiff's "right to due process").) Because Rule 9(j) applies solely to medical malpractice claims, see N.C. R. Civ. P. 9(j), it lacks relevance to Plaintiff's Section 1983 claim. See, e.g., Deal v. Central Prison Hosp., Civ. Action No. 5:09-CT-3182, 2011 WL 322403, at *4 (E.D.N.C. Jan. 27, 2011) (dismissing medical malpractice claim for failure to comply with Rule 9(j), but denying Rule 12(b)(6) motion to dismiss Section 1983 claim).

In responding to Defendant's Rule 9(j) argument, however, Plaintiff asserts that res ipsa loquitur saves his "State Claim of Negligence" (Docket Entry 16 at 11), thereby negating the need for Rule 9(j) certification. (See id. at 11-16.) To the extent Plaintiff's Response attempts to amend his Complaint to add a medical malpractice claim, that attempt fails for futility. See Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) (recognizing that "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards").

---

records pertaining to the alleged negligence" and "is willing to testify that the medical care did not comply with the applicable standard of care" or (ii) "allege[] facts establishing negligence under the existing common-law doctrine of res ipsa loquitur." N.C. R. Civ. P. 9(j)(1)-(3).

"[T]he doctrine of *res ipsa loquitur* . . . permits a fact finder 'to infer negligence from the mere occurrence of the accident itself' based on common knowledge or experience." <u>Wright v. United States</u>, 280 F. Supp. 2d 472, 481 (M.D.N.C. 2003) (quoting <u>Diehl v. Koffer</u>, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000)). This doctrine "is 'addressed to those situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of [the] defendant.'" <u>Wood v. United States</u>, No. 1:14cv1004, __ F. Supp. 3d __, __, 2016 WL 3962618, at *7 (M.D.N.C. July 21, 2016) (brackets in original) (quoting <u>Robinson v. Duke Univ. Health Sys.</u>, 229 N.C. App. 215, 224, 747 S.E.2d 321, 329 (2013)). Given in part the complexity and inherent risks of most medical treatments, <u>see Wright</u>, 280 F. Supp. 2d at 481, res ipsa loquitur "rarely applies in medical malpractice actions," <u>Wood</u>, __ F. Supp. 3d at __, 2016 WL 3962618, at *7. Instead, it remains reserved for "medical malpractice actions in which the 'common knowledge, experience and sense of laymen qualifies them to conclude that [the relevant] medical injuries are not likely to occur if proper care and skill is used.'" <u>Wright</u>, 280 F. Supp. 2d at 482 (quoting <u>Grigg v. Lester</u>, 102 N.C. App. 332, 335, 401 S.E.2d 657, 659 (1991)). These situations include "injuries involving gross negligence, such as surgical instruments left in the patient's body, and injuries

19

obviously remote from the site of a surgery." <u>Id.</u> at 481 (citations omitted).

Here, Plaintiff alleges the loss of his right testicle from decreased bloodflow following surgery that Defendant conducted to repair Plaintiff's right inguinal hernia. (<u>See</u> Docket Entry 16 at 15; <u>see generally</u> Docket Entry 2 at 5-7.) A layperson's common knowledge does not encompass whether constrained bloodflow represents an inherent risk of inguinal hernia surgery (or, for that matter, whether any particular post-surgery treatment would remedy any bloodflow issue). <u>Compare</u> <u>Diehl</u>, 140 N.C.App. at 380, 536 S.E.2d at 363 ("This Court does not believe[] that the proper standard of care or surgical procedure for gallbladder removal nor its attendant risks are within the common knowledge or experience of a jury."), <u>and</u> <u>Grigg</u>, 102 N.C. App. at 335, 401 S.E.2d at 659 ("[T]he cause of tears that occur in the uterus during the process of delivering a child by c[a]esarean section is not generally known to laymen."), <u>with</u> <u>Robinson</u>, 229 N.C. App. at 229, 747 S.E.2d at 332 ("[A]n understanding of the requisite techniques employed during the [colectomy] procedure is not required for a layman to determine that [the plaintiff's] small intestine should not have been connected to her vagina during the procedure and that such an anatomical result following surgery does not normally occur in the absence of negligence."). Thus, because "an understanding of the procedures involved and the proper techniques to be employed during

th[e hernia repair] procedures [i]s necessary for a determination by the jury as to whether the injury at issue in [this] case could have occurred in the absence of some negligence by the defendant health care provider," Robinson, 229 N.C. App. at 229, 747 S.E.2d at 332, res ipsa loquitur does not apply to Plaintiff's proposed medical malpractice claim.

Accordingly, Plaintiff's proposed medical malpractice claim requires Rule 9(j) certification. See N.C. R. Civ. P. 9(j)(1)-(2). Plaintiff has neither provided nor suggested he could provide such certification (see Docket Entry 16 at 11-17), rendering futile Plaintiff's proposed amendment. See Graves v. Andrews, No. 1:12cv154, 2013 WL 1010473, at *8 (M.D.N.C. Mar. 14, 2013) (granting motion to dismiss medical malpractice claim for failure to comply with Rule 9(j) certification requirements), aff'd, 539 F. App'x 157 (4th Cir. 2013); see also Smith v. Bank of the Carolinas, No. 1:11cv1139, 2012 WL 4848993, at *3 (M.D.N.C. Oct. 11, 2012) (observing that a proposed amendment fails for futility if it could not survive a Rule 12(b)(6) motion to dismiss (citing United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008))).

## CONCLUSION

The striking of Plaintiff's Response would serve no purpose. To the extent, however, that Plaintiff seeks to add a medical malpractice claim via the Response, his proposed claim remains

subject to Rule 9(j)'s certification requirement and thus fails for futility.  Finally, the Complaint sufficiently alleges a Section 1983 deliberate indifference claim against Defendant.

**IT IS THEREFORE ORDERED** that the Motion to Strike (Docket Entry 18) is **DENIED.**

**IT IS RECOMMENDED** that the Motion to Dismiss (Docket Entry 12) be denied.

This 30[th] day of December, 2016.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**