# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RAYBORN J. DURAND,              )
                                )
          Plaintiff,            )
                                )
     v.                         )     1:16cv86
                                )
ANTHONY G. CHARLES, M.D.,       )
                                )
          Defendant.            )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for an order on Plaintiff's "Motion for Production of Documents by Subp[oe]na" (Docket Entry 39) (the "Discovery Motion"), the "Supplement to Plaintiff[']s Request to issue Subpeona's" [sic] (Docket Entry 42) (the "Supplement"), and Plaintiff's "Reply to Defendant[']s Opposition" (Docket Entry 48) (the "Reply").  For the reasons that follow, the Court will deny the Discovery Motion, Supplement, and Reply.

## BACKGROUND

Alleging that Anthony G. Charles, M.D. (the "Defendant") committed acts and/or omissions amounting to deliberate indifference to his serious medical needs in February 2013, Rayborn J. Durand (the "Plaintiff") initiated this lawsuit in February 2016.  (See Docket Entry 2.)  Following denial of Defendant's dismissal motion in January 2017 (see Docket Entry 25), the Court entered an order adopting a "case-management schedule" for this matter (Text Order dated Jan. 30, 2017 (the "Scheduling Order")).  The Scheduling Order established a six-month discovery period and

directed "the parties [to] complete all discovery by 07/31/2017." (Id.) In May 2017, Plaintiff moved to compel production of certain risk management documents (the "Care Request") and North Carolina Medical Board (the "Medical Board") inquiry documents (the "Inquiry Request") from Defendant. (See generally Docket Entry 36 (the "Discovery Order") (analyzing motion to compel).)[1] In response to that motion, Defendant clarified that, aside from documents responsive to the Inquiry Request, he possessed only attorney-client privileged documents responsive to the Care Request. (See id. at 2, 4-5.)

In June 2017, the Court granted Plaintiff's request to compel documents responsive to the Inquiry Request, ordering that "on or before July 14, 2017, Defendant shall produce to Plaintiff all documents pertaining to the . . . Medical Board inquiry initiated by Plaintiff." (Id. at 9.) The Discovery Order further provided:

> If, upon receipt and review of the produced discovery, Plaintiff concludes in good faith that information contained therein warrants exploration via further discovery, he may file a motion, on or before August 4, 2017, requesting leave to conduct such discovery, notwithstanding the discovery deadline of July 31, 2017. Any such motion shall describe in detail the

---

[1] The Care Request asks "[t]hat Defendant provide Plaintiff with a true copy of . . . any and all documents relating to any type of risk management or other inquiry(s) pertaining to Plaintiff's care at the U.N.C. Medical Center," and the Inquiry Request asks "[t]hat Defendant provide Plaintiff with a true copy of[] . . . any and all documents pertaining to the . . . Medical Board inquiry initiated by Plaintiff." (Docket Entry 36 at 3-4 (internal quotation marks omitted).) [Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.]

2

> specific additional discovery Plaintiff would conduct and
> the nature and source of information from the discovery
> produced by Defendant in response to th[e Discovery]
> Order that led Plaintiff to seek further discovery.

(Id. at 9 n.6.)  On August 1, 2017, Plaintiff submitted the Discovery Motion (see Docket Entry 39 at 5-6), which the Court received on August 3, 2017 (see id. at 1).  On August 7, 2017, pursuant to Local Rule 56.1, Defendant provided notice of his intent to file a motion for summary judgment (see Docket Entry 40 at 1), which filing occurred on August 29, 2017 (see Docket Entry 43 at 1-2).  On August 14, 2017, Plaintiff submitted the Supplement (see Docket Entry 42 at 5-6), and, on August 30, 2017, he submitted the Reply (see Docket Entry 48 at 6-7).  The Discovery Motion, Supplement, and Reply seek extensions of the discovery deadline and leave to conduct additional discovery (see Docket Entries 39, 42, 48), which Defendant opposes (see Docket Entries 41, 46-47).

## DISCUSSION

The "[C]ourt enjoy[s] nearly unfettered discretion to control the timing and scope of discovery." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 426 (4th Cir. 1996); accord Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012) (observing that "[d]istrict courts are afforded broad discretion with respect to discovery"). Nevertheless, in exercising this discretion, the Court remains mindful that the Federal Rules of Civil Procedure (the "Rules") generally require issuance of a scheduling order early in each case, see Fed. R. Civ. P. 16(b), and that "[t]he drafters of the

3

Rules intended [the scheduling] order to control the subsequent course of the action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process," Forstmann v. Culp, 114 F.R.D. 83, 84-85 (M.D.N.C. 1987) (internal quotation marks omitted). As such, the discovery "schedule may be modified only for good cause and with the [Court's] consent." Fed. R. Civ. P. 16(b)(4). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D. W. Va. 1995); see also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." (emphasis added)).

Through the Discovery Motion, Supplement, and Reply, Plaintiff seeks leave to obtain discovery from Defendant and three nonparties. (See Docket Entries 39, 42, 48.) He further requests "an extension of time in which to conduct this additional discovery." (Docket Entry 39 at 1; see also Docket Entry 42 at 4 (asking "[t]hat the time allot[t]ed for discovery be enlarged").) More specifically, the Discovery Motion "requests that subpeona's [sic] be issued" to (i) the Medical Board for "all documents in [its] possession . . . relating to the inquiry initiated by

4

Plaintiff concerning Defendant" (the "Medical Board Request") (ii) "U.N.C. Health" and the North Carolina Department of Public Safety (the "N.C.D.P.S.") for risk management documents, including a "Mortality Review[,] . . . related to Plaintiff[']s medical care while at the U.N.C. Medical Center or while in the care of the N.C.D.P.S.," and (iii) N.C.D.P.S. for "[a]ll invoices and DC-702 Forms that were generated by Plaintiff[']s stay and treatment at the U.N.C. Hospital" (the "Damages Request"). (Docket Entry 39 at 1-3.) The Supplement provides recipient information for the Medical Board and N.C.D.P.S. subpoenas (see Docket Entry 42 at 2-3) and "enclose[s a] Second Set of Interrogatories" (id. at 4-5) to Defendant (see Docket Entry 42-1 (the "Interrogatories")) soliciting information "concerning the U.N.C. Health Risk Management records sought" (Docket Entry 48 at 5). Finally, the Reply attaches a "5th Request for Documents" (Docket Entry 48-1 (the "Document Request")) that Plaintiff served on Defendant "[o]n August 18, 2017[,] . . . [for] two depositions taken by the Defendant" (Docket Entry 48 at 6).

In regard to the Medical Board Request, the Discovery Motion states that "Plaintiff should have asked that a subpoena be issued for these documents rather than make a document request to the [D]efendant." (Docket Entry 39 at 2.) The Discovery Motion further maintains that Defendant's answer to the Medical Board inquiry "revealed information not previously reported in

5

Plaintiff[']s medical record and as such the complete Medical Board findings deserve a look."  (Id. at 4-5.)  Although the Discovery Order directed Plaintiff to "describe in detail . . . the nature and source of information from the discovery produced by Defendant in response to th[e Discovery] Order that led Plaintiff to seek further discovery" (Docket Entry 36 at 9 n.6), the Discovery Motion provides no other information regarding this newly produced evidence (see generally Docket Entry 39).  However, Plaintiff's August 30th Reply reflects that the "information not previously reported" (id. at 4-5) consists of asserted variations between the description of Plaintiff's second surgery in Defendant's letter to the Medical Board and Plaintiff's medical records (see Docket Entry 48 at 2-3).

Even accepting this belated explanation, the Court finds that Plaintiff failed to establish the "good cause" necessary for amending the Scheduling Order to permit this discovery.  Most significantly, Plaintiff has not displayed sufficient diligence in seeking the Medical Board's records, as he has known that these materials existed since he initiated his Medical Board complaint against Defendant in November 2015 (see Docket Entry 41-1 at 4-12).  As such, neither the specified variations nor the fact that he now believes that he "should have asked that a subpoena [to the Medical Board] be issued for these documents" rather than requesting them from Defendant (Docket Entry 39 at 2) justifies the requested

6

extension.  Moreover, Plaintiff indicates that the Medical Board concluded that "there was no violation of the Medical Practice [A]ct in this instance."  (Docket Entry 42 at 2; see also Docket Entry 39 at 2 ("The Medical Board found [Defendant] innocent of any wrong doing.").)  Thus, notwithstanding the asserted discrepancy in surgical descriptions, any suggestion that "a closer look" at the Medical Board materials (Docket Entry 48 at 3) would yield useful information for Plaintiff represents sheer speculation.  Indeed, given the North Carolina statutes discussed in the Discovery Order, it remains at best questionable whether a subpoena to the Medical Board would yield any new materials for use in this matter.  (See Docket Entry 36 at 7 n.5 (examining a North Carolina statute that "protects materials in the [Medical Board's] possession from . . . compelled production from the Medical Board" (emphasis omitted)).)  Under the circumstances, the Court declines to extend the discovery period to enable issuance of a subpoena to the Medical Board for "the complete Medical Board findings" (Docket Entry 39 at 5).

Plaintiff likewise fails to establish good cause for the risk management discovery.  In regard to the risk management subpoenas, Plaintiff maintains that "this discovery should be allowed as a matter of course due to the nature of the findings which is to review possible negligent care."  (Id.)  He further asserts that these "records as pertaining to Plaintiff[']s case deserve a look."

7

(Docket Entry 48 at 3.)  In addition, Plaintiff contends that U.N.C. Health's refusal to provide contact information for accepting service of the subpoena necessitates the Interrogatories. (Id. at 5-6.)  He does not, however, explain why he waited two months after receiving notice that Defendant did not possess such materials (see Docket Entry 36 at 2-5) to request subpoenas to the N.C.D.P.S. and U.N.C. Health.  (See Docket Entries 39, 42, 48.)  In light of this delay, Plaintiff fails to establish good cause for the requested discovery extension.

Plaintiff similarly has not shown good cause regarding the Damages Request and Document Request.  In regard to the Damages Request, Plaintiff states that he received billing information from "[D]efendant but the documents rec[ei]ved were not useful for Plaintiff[']s desired use which is to help set damages."  (Docket Entry 39 at 4.)  Plaintiff offers no other information regarding his pursuit of damages information, such as when he "requested and rec[ei]ved" this billing information from Defendant.  (Id.)  As such, he has not established that he acted with diligence in pursuing the Damages Request.  Plaintiff also fails to offer any explanation for why he waited until August 18, 2017, to serve the Document Request on Defendant and until August 30, 2017, to request leave for such discovery.  (See Docket Entry 48 at 6.)  Given that the relevant depositions occurred on or before July 31, 2017 (see Text Order dated Jan. 30, 2017), this unexplained delay precludes

8

a finding that Plaintiff acted diligently regarding the Document Request.  Plaintiff therefore fails to establish good cause for the requested discovery extensions.[2]

**CONCLUSION**

Plaintiff has not shown good cause for modifying the Scheduling Order, as required by Rule 16(b)(4).

**IT IS THEREFORE ORDERED** that the Discovery Motion (Docket Entry 39), Supplement (Docket Entry 42), and Reply (Docket Entry 48) are **DENIED**.

This 15th day of September, 2017.

                                              /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                        **United States Magistrate Judge**

---

[2] Plaintiff does not argue that the discovery Defendant produced pursuant to the Discovery Order prompted his Damages Request or Document Request.  (See Docket Entry 39 at 3-5; Docket Entry 48 at 6.)  Accordingly, because Plaintiff waited until after the discovery deadline to seek these extensions, he would also need to satisfy the demanding "excusable neglect" standard set by Rule 6(b)(1)(B).  See Tyndall v. Maynor, 288 F.R.D. 103, 109 (M.D.N.C. 2013).  Given his failure to explain his delay in requesting these extensions, as well as the threat that allowing these extensions would pose to the Court's and Defendant's interest in adhering to the case-management deadlines for this matter, including the August 30, 2017, dispositive motions' deadline, see M.D.N.C. LR 56.1(b), the Court concludes that Plaintiff has also failed to establish excusable neglect.  See Tyndall, 288 F.R.D. at 109-10 (discussing "excusable neglect" factors identified in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993)).